UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RALPH S. ZANGARA, Sr.,

                Plaintiff,

v.                                          **DECISION AND ORDER**
                                                    07-CV-163S

INTERNATIONAL PAINTERS AND ALLIED
TRADES INDUSTRY PENSION FUND,

                Defendant.

## I. INTRODUCTION

Plaintiff Ralph S. Zangara, Sr. commenced this action by filing a complaint alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and the Full Faith and Credit Act, 28 U.S.C. § 1738. Presently before this Court are the parties' Motions for Summary Judgment.[1] For the reasons discussed below, Plaintiff's motion is denied and Defendant's motion is granted.

## II. BACKGROUND

### A. Facts

Plaintiff is a participant in the International Painters and Allied Trades Industry Pension Fund ("Fund"), which is an employee pension benefit plan within the meaning of ERISA. (Complaint, Docket No. 1, ¶¶ 2, 3.) On July 26, 1995, Plaintiff submitted an

---

[1] In support of his motion, Plaintiff filed the Affirmation of Scott A. Stepien, Esq., with exhibits, and a Memorandum of Law. (Docket Nos 15, 18.) In opposition, Defendant filed a Response to Plaintiff's Motion for Summary Judgment and a Response to Plaintiff's statement of facts. (Docket No. 20.)

    In support of its motion, Defendant filed a memorandum of law, a Rule 56.1 Statement of Undisputed Facts, the Declaration of Robert L. Boreanaz, Esq., the Declaration of Gary J. Meyers, the Declaration of Peter Verne, the Amended Declaration of Gary J. Meyers, and a reply memorandum. (Docket Nos. 16,17, 24, 26.) In opposition, Plaintiff filed two memoranda and an affirmation. (Docket Nos. 21, 22, 25.)

1

application to the Fund for his pension benefits. (Meyers Declaration, Docket No. 24, ¶ 5.)
At that time, Plaintiff was fully vested in his pension. (Defendant's Rule 56 Statement of
Undisputed Facts ("Defendant's Statement"), Docket No. 16, ¶ 1.) In his application for
benefits, Plaintiff indicated that his date of retirement would be September 1, 1995, and
he elected to receive his pension benefits in the form of a "Husband-and-Wife Pension,"
with his spouse as his designated beneficiary. (Defendant's Amended Exhibit B, Docket
No. 24, pp. 6-7 of 131.)[2]

The Fund provided Plaintiff with a Summary Plan Description ("SPD") upon his application for retirement, which described the benefit payment options available, including the Husband-and-Wife Pension. (Stepien Response Affirmation, Docket No. 22, ¶ 3.) On page 11 of the SPD, each plan participant is notified that if he or she is married at the time of retirement, pension benefits will automatically be payable in the form of a 50% Husband-and-Wife Pension, unless the participant and his or her spouse reject that option in a notarized writing. (Stepien Resp. Affirm., Ex. A, p. 20 of 75.) The SPD describes the Husband-and-Wife Pension as providing a reduced monthly benefit for the lifetime of the plan participant; after the death of the participant, the participant's surviving spouse will receive a monthly benefit equal to 50% of the amount that the participant had been receiving. (Id.) The SPD further explains that the reason for the participant's reduced monthly benefit is to protect the participant's surviving spouse for his or her lifetime. (Id.)

On page 12 of the SPD, the plan participant is informed that once he or she begins

---

[2]Each party filed their exhibits under a single docket number. (Docket Nos. 22 (Plaintiff) and 24 (Defendant)). For ease of reference, citations are to the docket page numbers, rather than individual document page numbers.

receiving payments under the Husband-and-Wife Pension option, the reduced benefits he or she is receiving will not be increased in the event of a divorce. (Id. at p. 21 of 75.) The surviving spouse (i.e., the ex-spouse) would "still receive the spousal benefits, subject to any Qualified Domestic Relations Orders which create rights to a pension for a former spouse or other payee." (Id.)

The plan participant is notified again on page 12 that "the Husband-and-Wife Pension will take effect automatically *unless you and your spouse reject it in writing and you have the rejection and consent notarized.*" (Id.) The SPD states that the participant and his or her spouse may jointly submit such rejection at any time within the 90-day period before the pension effective date. (Id.) The SPD also states that in order for the rejection to be valid, the waiver and consent must also be filed after the participant has received a detailed explanation of the payment options available. (Id.) The SPD informs the plan participant on page 12 that spousal consent for rejection of the Husband-and-Wife Pension option is not needed if the participant can provide the plan Trustees with satisfactory evidence that: (1) the participant has no spouse; (2) the participant's spouse cannot be located; (3) the participant and his or her spouse are legally separated; or (4) the participant has been abandoned by his or her spouse. (Id.)

Page 16 of the SPD identifies the "pension effective date," for purposes of rejection of the Husband-and-Wife Pension, as the first day of the first month following the later of: (1) the date on which the participant's application is received, provided that the participant has satisfied all of the eligibility requirements of the plan and terminated his or her employment; or (2) 30 days after the participant has received information regarding the available benefit options, provided that his or her employment has been terminated. (Id.

3

at p. 25 of 75.)

As stated in the introductory page of the SPD, the SPD is only a summary. (Id. at p. 7 of 75.) The pension plan itself is governed by the pension plan document (the "Plan"). (Id. at p. 7 of 75.) In the event of a conflict between the SPD and the Plan, the Plan prevails. (Id.)

The Plan largely mirrors the SPD concerning the Husband-and-Wife Pension option, including the waiver procedures. For instance, section 5.02(c) of the Plan provides that after pension payments begin, a Husband-and-Wife Pension may not be revoked nor the participant's benefits increased by reason of a subsequent divorce. (Id. at p. 53 of 75.) Section 5.02(d)(1) provides that the Husband-and-Wife Pension may only be waived if the Plan participant files a written waiver, and the participant's spouse provides written and notarized consent to the waiver. (Id.) Section 5.02(d)(2)(D) provides that a participant who is abandoned by his or her spouse may submit a waiver without consent from the spouse, but only where such abandonment is confirmed by a court order. (Id.)

More importantly, Section 5.02(d)(3) reaffirms the requirement that, in order for a waiver of the Husband-and-Wife Pension to be timely, two conditions must be fulfilled: (1) the request for waiver and any required consent must be filed with the Trustees within the 90-day period before the Annuity Starting Date; and (2) the waiver, and any required consent, must be filed after the participant's receipt of a detailed explanation of the available benefit payment options and their financial impact, which is to be provided no more than 90 days nor fewer than 30 days prior to the Annuity Starting Date. (Id.) Section 1.03(a) defines the Annuity Starting Date as the first day of the first calendar month starting after the participant has fulfilled all of the conditions for entitlement to benefits and after the

4

later of: (1) submission by the participant of a completed application for benefits; or (2) 30 days after the participant is advised of the available benefit payment options. (Id. at p. 36 of 75.)

Plaintiff confirmed his choice of the Husband-and-Wife Pension in an election form dated September 29, 1995. (Id. at p. 8 of 131.) The form indicated that the reduced monthly payment amount that Plaintiff would receive for his life would be $1,763.50; upon his death, his spouse would receive $882 per month. (Id.)

The Fund issued Plaintiff his first pension check on October 12, 1995. (Defendant's Statement, ¶ 8.) Plaintiff alleges that his spouse abandoned him at some point in the latter part of September 1995, after the date of his official retirement but before he received his first payment, and that he contacted the Fund by telephone in September, October and November 1995, in an unsuccessful attempt to change his beneficiary designation. (Stepien Affirmation, Docket No. 15, ¶ 7.) The Fund has no record of any calls received from Plaintiff. (Defendant's Response to Plaintiff's "Statement of Material Facts", Docket No. 20, ¶ 7.)

Plaintiff became legally divorced on January 6, 1997. (Judgment of Divorce, Docket No. 18, p. 15 of 143.) He obtained a Judgment of Divorce, which provides on page 4 that "the Wife will waive any and all right, title and interest she has in the Husband's pension through the International Painter's Union." (Id.) On May 6, 1997, Plaintiff also obtained an order entitled "Qualified Domestic Relations Order Regarding Pension Benefits" ("QDRO"), which purported to disclaim and waive the interest of Plaintiff's spouse in Plaintiff's pension benefits. (Qualified Domestic Relations Order, Docket No. 18, pp. 19-21 of 143.)

5

By letter from his counsel dated May 20, 1997, Plaintiff submitted a copy of the QDRO to the Fund, and requested that the Fund discontinue withholding amounts from his pension in accordance with his divorce judgment and QDRO. (Meyers Decl., Docket No. 24, ¶ 12; Def. Am. Ex. B, Docket No. 24, p. 114 of 131.) Plaintiff requested that all future payments be sent to him in the amount that he would have received if he had waived the Husband-and-Wife Pension option. (Id.)

By letter dated August 8, 1997, the Fund denied Plaintiff's request to increase his pension payments. (Def. Am. Ex. B, Docket No. 24, pp. 119-120 of 131.) The Fund explained to Plaintiff that the order he submitted did not meet the requirements for a QDRO as provided in ERISA, and therefore could not be honored. (Id.) Furthermore, the letter advised Plaintiff that he could not use a QDRO to change the form of his payment, because the Plan does not allow a change in payment form to be made after retirement. (Id.)

Plaintiff appealed the Fund's decision to the Board of Trustees ("Board") in March 1998, which upheld the denial. (Meyers Decl., Docket No. 24, ¶ 15.) By letter dated March 16, 1998, the Board reiterated its finding, explaining that, in accordance with the Plan documents, election of a pension payment option is irrevocable and may not be altered by subsequent divorce. (Def. Am. Ex. B, Docket No. 24, p. 121 of 131.)

By letter dated June 19, 2006, Plaintiff renewed his request that the Fund increase his monthly pension amount to account for his spouse's waiver of her interest in his pension in the divorce judgment. (Meyers Decl., Docket No. 24, ¶ 16; Def. Am. Ex. B, Docket No. 24, pp. 123-124 of 131.) The Fund responded by letter dated July 10, 2006, denying Plaintiff's renewed request to increase his monthly pension amount, and

6

explaining once again its determination that when pension benefits commence, the form of payment cannot be changed as a result of divorce. (Def. Am. Ex. B, Docket No. 24, pp. 125-126 of 131.)

Plaintiff appealed the Fund's decision by letter dated September 7, 2006. (Id. at pp. 127-129 of 131.) As part of this appeal, Plaintiff argued that "ERISA compels no particular decision that survivorship vesting occurs at the time of retirement, at the time of divorce with a Qualified Domestic Relations Order (QDRO), or at the time of death of the plan participant." (Id. at p. 127 of 131.) Plaintiff also made several other arguments in favor of increasing his pension benefits: (1) that ERISA preemption provisions do not preclude the use of a state court divorce judgment to waive survivorship rights in pension benefits; (2) that the cost to the Fund would be less because Plaintiff is likely to die before his ex-spouse, and the Fund's obligations would end upon his death; and (3) that the Full Faith and Credit Act required that the divorce judgment be given effect, such that his ex-spouse's waiver should be honored by the Fund. (Id. at p. 128 of 131.) By letter dated March 9, 2007, the Fund denied Plaintiff's appeal.

**B.    Procedural History**

Plaintiff commenced this action on March 19, 2007, by filing a complaint in the United States District Court for the Western District of New York. The parties filed their Motions for Summary Judgment on January 15, 2008. Briefing was completed on February 29, 2008, at which time this Court took the motions under advisement without oral argument.

## III. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c)(2).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law." Id.  In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion."  Addickes v. S.H. Kress and Co., 398 U.S. 144, 159-59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.

**B.     Analysis**

Plaintiff moves for summary judgment on his claim that the Fund violated the Full Faith and Credit Act and ERISA when it refused to give effect to his divorce judgment and increase his monthly pension benefit payments. Plaintiff asserts that, under New York law, his spouse waived her interest in his pension, and he is therefore entitled to full pension benefits. The Fund opposes Plaintiff's motion, and in its own motion, argues that it is entitled to summary judgment because Plaintiff's election of the Husband-and-Wife Pension is irrevocable and his spouse's waiver was ineffective.[3]

Plaintiff's claims hinge on his mistaken belief that his spouse could validly waive her interest in his pension through their divorce judgment. At the time Plaintiff filed his complaint, this type of waiver was permissible in several circuits. There was, however, a split "regarding whether administrators of an ERISA plan [were] required to recognize a beneficiary's waiver of his or her benefits in external documents." Hallingby v. Hallingby, 541 F. Supp.2d 591 (S.D.N.Y. 2008) (citing McGowan v. NJR Serv. Corp., 423 F.3d 241, 244 (3d Cir. 2005), vacated by, 574 F.3d 51 (2d Cir. 2009)). "The majority of the Circuits . . . looked to federal common law to hold that such waivers [were] valid under certain circumstances, but the minority view [was that] plan administrators need not look beyond the documents on file with the plan to determine whether there [had] been a valid waiver effectuated in outside private documents." Id. The Second Circuit adhered to the minority view. See Krishna v. Colgate Palmolive Co., 7 F.3d 11, 16 (2d Cir. 1993).

The Supreme Court resolved the circuit split in Kennedy v. Plan Adm'r for DuPont

---

[3]Defendant also asserts statute of limitations arguments, which this Court need not address because it finds that Defendant is entitled to summary judgment on the basis of its principle arguments.

Sav. & Inv. Plan. __ U.S. __, 129 S.Ct. 865, 172 L.Ed.2d 662 (2009). In Kennedy, the Court held that plan documents govern waivers of benefits. Id. If a purported waiver is inconsistent with the form prescribed in the plan, the waiver is ineffective. Id. The Court emphasized that a "plan administrator is obliged to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Title I] and [Title IV] of [ERISA]," § 1104(a)(1)(D), and the Act provides no exemption from this duty when it comes time to pay benefits.'" Id. at 875.[4]

Relying on this language, the Court reasoned that "by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: 'simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, with the folderol essential under less-certain rules.'" Id. at 875-76 (citing Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown, 897 F.2d 275, 283 (7th Cir. 1990) (Easterbrook, J., dissenting)).

---

[4]Plaintiff argues that ERISA should not apply in this case because "[t]here are no substantial federal interests at stake under ERISA that implicate the constitution, separation of powers, or the like that rise to the clearly established standard of preemption . . . ." (Pl. Reply Mem., Docket No. 25, p. 4.) But contrary to Plaintiff's position, there are substantial federal interests involved here.

Congress included certain provisions in ERISA specifically to protect the interests of surviving spouses. Section 1055(a)(1) of ERISA provides that "[e]ach pension plan . . . shall provide that in the case of a vested participant who does not die before the annuity starting date, the accrued benefit payable to such participant shall be provided in the form of a qualified joint and survivor annuity." Furthermore, under Section 1055(c)(2), the qualified joint and survivor annuity may only be waived by the participant in writing, and then only if the spouse consents to the waiver in writing witnessed by a notary public.

As the Supreme Court has stated, "[t]he statutory object of the qualified joint and survivor annuity provisions, along with the rest of § 1055, is to ensure a stream of income to surviving spouses." Boggs v. Boggs, 520 U.S. 833, 843, 117 S.Ct. 1754, 1761, 138 L.Ed.2d 45 (1997); see also Lasche v. George W. Lasche Basic Profit Sharing Plan, 111 F.3d 863, 867 (11th Cir. 1997) ("strict ERISA requirements designed to ensure a valid waiver of a spouse's retirement plan are consistent with the legislative policy of protecting spousal rights.") Since Congress has evinced its intent to protect the rights of surviving spouses through ERISA, the provisions of ERISA apply.

10

In support of his position that his spouse validly waived her interest in his pension through the divorce judgment, Plaintiff relies heavily on Fox Valley. That case, which adhered to the majority view, held that a spouse could waive his or her rights to ERISA pension benefits through a specific waiver in a divorce settlement. 897 F.2d at 282. But because the Supreme Court has rejected what was the majority view, including Fox Valley, the principles established in that case no longer control.[5] Under Kennedy, the beneficiary of a pension plan participant may not waive his or her rights to the participant's ERISA benefits through a divorce judgment, if such a waiver is not allowed under the plan documents. Instead, a beneficiary's waiver is effective only if it complies with the provisions of the pension plan document.

Applying Kennedy, this Court finds that Plaintiff has failed to present sufficient evidence from which a trier of fact could reasonably conclude that either Plaintiff or his spouse complied with the Plan's requirements for waiving a spouse's interest in pension benefits. Neither Plaintiff nor his spouse ever submitted a written, notarized waiver or consent to the Fund. Thus, as the Plan provides, Plaintiff automatically received a Husband-and-Wife Pension because he was married. Moreover, Plaintiff's divorce became final after he began receiving pension payments, rendering his Husband-and-Wife Pension election irrevocable under the Plan. Consequently, Plaintiff cannot establish that the Fund violated the Full Faith and Credit Act or ERISA when it refused to alter Plaintiff's

---

[5]As stated, before Kennedy, the Second Circuit adhered to the minority view. In Krishna v. Colgate Palmolive Co., the Second Circuit determined that "[i]t would be counterproductive to compel [a plan] administrator to look beyond . . . designations [in plan documents] into varying state laws regarding wills, trusts and estates, or domestic relations to determine the proper beneficiaries of [plan] distributions." 7 F.3d at 16. Therefore, Plaintiff's reliance on Fox Valley would have been unavailing even before Kennedy was decided.

pension election because Plaintiff failed to comply with the Plan.

Plaintiff argues that he did not need his spouse's consent to waive the Husband-and-Wife Pension because she had abandoned him before he began receiving payments, and the Plan does not require consent under such circumstances. But the Plain requires that any claim of abandonment be accompanied by a court order confirming the abandonment. Plaintiff has not come forward with any such order. And in any event, there is no evidence that Plaintiff ever submitted a timely written waiver based on abandonment to the Fund. Because Plaintiff never submitted a valid waiver, the Fund correctly denied his request to revoke his election of the Husband-and-Wife Pension and increase his benefits.

Plaintiff's final argument is that the Plan is contradictory and ambiguous, specifically as it relates to its nonforfeiture provision, found at Section 7.08, which provides as follows:

> The benefits to which a Pensioner is entitled under this Plan upon his attainment of Normal Retirement Age are Vested (nonforfeitable), subject to retroactive amendment made within the limitations of Section 411(a)(3)(C) of the Internal Revenue Code and Section 302(c)(8) of ERISA. The benefits to which a surviving spouse is entitled shall likewise be nonforfeitable. Pensioners and Beneficiaries shall be entitled to any of the other benefits of this Plan subject to all of the applicable terms and conditions.

(Stepien Resp. Affirm., Ex. A, p. 62 of 75.)

According to Plaintiff, this provision prohibits the Fund from reducing his pension benefit because the reduction causes him to forfeit a portion of his vested benefits. This interpretation, however, is not consistent with the purpose and effect of the nonforfeiture provision.

In <u>Alessi v. Raybestos-Manhattan, Inc.</u>, the United States Supreme Court opined

that by passing ERISA, Congress intended to "ensure that 'if a worker has been promised a defined pension benefit upon retirement – and if he has fulfilled whatever conditions are required to obtain a vested benefit – . . . he actually receives it.'" 451 U.S. 504, 510, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402 (1981) (citing Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980)).

The Court explained that, in order to ensure that workers receive their pensions, "ERISA establishes that '[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age.'" Id. at 510-11 (citing 29 U.S.C. § 1053(a)). Furthermore, "ERISA defines a 'nonforfeitable' pension benefit or right as a 'claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan.'" Id. at 511 (citing 29 U.S.C. § 1002(19)).

In Alessi, the Court outlined the scope of the nonforfeiture requirement, finding that "the statutory definition of 'nonforfeitable' assures that an employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular amount or a method for calculating the benefit." Id. at 512. "'[I]t is the claim to the benefit, rather than the benefit itself, that must be 'unconditional' and 'legally enforceable against the plan.'" Id. (citing Nachman, 446 U.S. at 371, 100 S.Ct. at 1731).

The nonforfeiture provision therefore ensures a participant's right to receive his pension, not the manner in which or amount that is paid. Here, the Fund acted in accordance with the nonforfeiture provision by accepting Plaintiff's application for his pension benefits, and distributing those benefits in the form of a Husband-and-Wife

13

Pension, which Plaintiff voluntarily elected. Accordingly, Plaintiff's argument that the Fund caused him to forfeit his benefits by denying his subsequent request to revoke his election of the Husband-and-Wife Pension is unpersuasive.

## IV.  CONCLUSION

For the foregoing reasons, this Court finds that the Fund is entitled to summary judgment in its favor. The Fund's Motion for Summary Judgment is therefore granted and Plaintiff's motion is denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 16) is GRANTED.

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 15) is DENIED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:    March 31, 2010
          Buffalo, New York

                                                                 s/William M. Skretny
                                                                 WILLIAM M. SKRETNY
                                                                      Chief Judge
                                              United States District Court